## HENNINGSEN v. UNITED STATES FIDELITY AND GUARANTY COMPANY OF BALTIMORE, MARYLAND.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT. ·

No. 78. Argued December 16, 17, 1907.—Decided February 24, 1908.

Although diversity of citizenship is alleged in the bill, if the grounds of the suit and relief are also based on statutes of the United States, which, as in this case, are necessarily elements of the decision of the Circuit Court of Appeals, an appeal lies from the judgment of that court to this court.

The equity of the surety on a bond given by a contractor under the act of August 13, 1894, 28 Stat. 278, who by reason of the contractor's default has been obliged to pay material-men and laborers, is superior to that of a bank loaning money to the contractor, secured by assignments of amounts to become due. In such a case the surety is subrogated to the rights of the contractor, but the bank is not.

· 143 Fed. Rep. 810, affirmed.

R. M. HENNINGSEN and Edward W. Clive, as copartners, in May, 1903, contracted with the United States for the construction of certain buildings at Fort Lawton, in the State of Washington, and entered into a bond with the United States Fidelity and Guaranty Company of Baltimore (hereinafter called the Guaranty Company) as surety in the penal sum of $11,625 for the faithful performance of the contract, and to "promptly make full payments to all persons supplying labor or materials in the prosecution of the work provided for in said contract." The buildings were constructed in accordance with the terms of the contract, but the contractors failed to pay certain just and lawful claims for labor and materials, amounting in the aggregate to $15,409.04. After such default the Guaranty Company instituted a suit in the United States Circuit Court for the District of Washington, in which it made the contractors and all persons to whom they were indebted for labor and materials defendants, confessing its own liability to the full amount of the bond. A decree was entered, adjudging the

company liable to such creditors of the contractors in the full sum of the bond, $11,625, and awarding payment to such creditors *pro rata*. It also adjudged that upon such payment the liability of the company upon the bond should be discharged. On March 16, 1904, pending the performance of the contract, the contractor, or rather Henningsen alone, for Clive had ceased to have any connection with the performance of the contract, made a written assignment of all payments which were then due, or might thereafter become due on account of the contract, to R. R. Spencer, in trust for the National Bank of Commerce of Seattle, to secure payment of a loan made by the bank to the contractors, October 10, 1903, of $3,500, and also subsequent loans, and at the same time gave as further security an order addressed to the United States quartermaster, requesting him to deliver to said Spencer all checks of the Government on account of said contract. The moneys so loaned were paid directly by the bank to Henningsen and handled and disbursed by him, without any supervision or control upon the part of the bank or Spencer. This suit was commenced by the Guaranty Company by a bill in the Circuit Court of the United States for the District of Washington to restrain the appellants from collecting or accepting the balance due on the contract from the United States. It appeared at the time of the commencement of the suit that there was in the hands of the quartermaster, due upon the contract, the sum of $13,066, which he was about to pay to Spencer under the assignment and order. On June 17, 1904, an arrangement was made between the parties, by which the sum of $8,024.21 was paid to certain creditors, and the balance, $5,041.79, was applied in conditional payment of the indebtedness of the contractors to the bank, with a stipulation that if it should be finally determined that the Guaranty Company was entitled to receive it then the bank should pay it to the Guaranty Company. This suit proceeded to a decree in favor of the Guaranty Company for $5,041.79, which decree was affirmed by the Circuit Court of Appeals. (February 12, 1906; 143 Fed. Rep. 810;

74 C. C. A. 484.) The bond of the Guaranty Company was given under the requirements of the act of Congress of August 13, 1894, c. 280 (28 Stat. 278), which reads:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: *Provided*, That such action and prosecution shall involve the United States in no expense."

*Mr. George E. de Steigner*, with whom *Mr. W. W. Wilshire* was on the brief, for appellants:

The contract, so far as the United States is concerned, had been fully performed, so that there was no right of the Government to which the surety company could be subrogated; the creditors furnishing labor and material had no lien upon the fund, and therefore there was no right in their favor to which the surety company could be subrogated; therefore the War Department was entitled to pay it to the contractors or to their assignee, the bank, and either the contractors or the bank

was entitled to receive it. Therefore the Circuit Court of Appeals was in error in stating that "the real question in the case is one of priority of equities as between the bank and the surety company." The real question is whether the surety company had any equity whatsoever.

It must recover, if at all, on the strength of its own right. This right must be something more than the general right of a creditor to be paid. It must be something in the nature of a lien, legal or equitable, upon the particular fund. *Prairie State Bank* v. *United States,* 164 U. S. 227; *First National Bank* v. *City Trust Company,* 114 Fed. Rep. 529; *Greenville Savings Bank* v. *Lawrence,* 76 Fed. Rep. 545; *Lawrence* v. *United States,* 71 Fed. Rep. 228; *Reid* v. *Pauly,* 121 Fed. Rep. 652; *Richard Brick Company* v. *Rothwell,* 18 App. D. C. 516.

The decision in each case was founded upon the fact, either that the contractors had failed to perform their contract and the sureties had completed the performance thereof for the Government, or that the contract provided for the retention of a portion of the contract price until laborers and material-men were paid. In the present case, neither of these facts is found. The original contractors finished the work for the Government; and the contract contained no stipulation for retaining any part of the amount due for the payment of laborers and material-men. There is, therefore, no default of which the Government can take advantage. So far as it is concerned, the contract has been fully performed. *United States* v. *Rundle,* 100 Fed. Rep. 400; *United States* v. *National Surety Co.,* 92 Fed. Rep. 549.

There was no right or equity left in the United States to which the complainant could be subrogated. *Liles* v. *Rogers,* 113 N. Car. 197.

The laborers and material-men never had any right to the fund. Aside from some statutory or contract provision, laborers or material-men have no claim, legal or equitable, either against the property improved, or the contract price. *Lawrence* v. *United States,* 71 Fed. Rep. 228; *Canal Co.* v. *Gor-*

*don,* 6 Wall. 561, 571; *Withrow Lumber Co.* v. *Glasgow Investment Co.,* 101 Fed. Rep. 863–868; *Mechanics' Bank* v. *Winant,* 1 N. Y. S. 659–660; *Randolph* v. *New York,* 53 How. Pr. 68; Phillips on Mechanics' Liens, § 1; 20 Am. & Eng. Enc. Law (2d ed.), 269, 293.

Of course, in no case is there such a claim in the case of public property. 20 Am. & Eng. Enc. Law (2d ed.), 295.

The complainant cannot be subrogated to any rights of the Government, because the contract had been fully performed and the Government had lost all interest in the retention of the fund; and the complainant cannot be subrogated to the rights of the laborers or material-men, because the fund was not retained for their benefit and they have no interest therein to which the right of subrogation can attach.

*Mr. James B. Murphy,* with whom *Mr. Harold Preston, Mr. Carroll B. Graves* and *Mr. Edward B. Palmer* were on the brief, for appellees:

The assignment made by Henningsen to Spencer is void under Rev. Stat., §§ 3477, 3737, as against the rights of third persons. *Greenville Savings Bank et al.* v. *Lawrence,* 76 Fed. Rep. 545; *United States* v. *Gillis,* 95 U. S. 407; *Spawford* v. *Kirk,* 97 U. S. 484.

The appellant bank occupies no better position than a general creditor. It was under no obligation to lend this money, and there is no proof that any part of it was used on the contract in question. The money was passed to the credit of Henningsen, and checked out to whom and for what no one seems to know, and as far as this fund is concerned the bank is a stranger and a mere volunteer. *Emmert* v. *Thompson,* 52 N. W. Rep. 31; Sheldon on Subrogation, § 240; *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534.

On the other hand, this appellee, by admitting its liability and paying the full penalty of its bond into court, comes into court with clean hands. It did equity and to all intents and purposes occupies the same position in a court of equity as a

surety who had finished a contract or had already paid the contractors' bills. That is, it is entitled to assert the doctrine of subrogation and has a prior equity in this fund. The doctrine of subrogation does not depend on a lien. *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534; *Matthews* v. *Fidelity Trust Co.,* 52 Fed. Rep. 687; *Memphis & Little Rock R. R. Co.* v. *Dow,* 120 U. S. 287; *Emmert* v. *Thompson,* 52 N. W. Rep. 31; *Prairie State Bank* v. *United States,* 164 U. S. 227; *First National Bank* v. *City Trust Co.,* 114 Fed. Rep. 529.

The appellants' contention that appellee is not entitled to assert the right of subrogation is not well founded. They insist that there "must be something in the nature of a lien." Such is not the law. This doctrine is a creation of equity to see that substantial justice is done by one who in good conscience ought to do it. *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534; *Memphis & Little Rock R. R. Co.* v. *Dow,* 120 U. S. 287; *Emmert* v. *Thompson,* 52 N. W. Rep. 31; *Prairie State Bank* v. *United States,* 164 U. S. 227, and cases cited.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

A motion is made to dismiss on the ground that the jurisdiction of the Circuit Court was invoked solely on the ground of the diversity of citizenship of the parties, and hence the decree of the Circuit Court of Appeals was final. The motion must be overruled. Diversity of citizenship was, it is true, alleged in the bills, but grounds of suit and relief were also based on the statutes of the United States, as from the discussion of the merits will be seen. Those statutes entered as elements into the decision of the Circuit Court of Appeals, and were necessary elements. *Howard* v. *United States,* 184 U. S. 676; *Warner* v. *Searle & Hereth Co.,* 191 U. S. 195, 205.

Passing to the merits of the case, the question turns upon the respective equities of the parties. Appellants concede that the bank was not by the making of the loans to Henningsen entitled to subrogation to the rights, if any, of the United

States or the laborers or material-men, and also that if the Guaranty Company is entitled to subrogation to any right of the United States Government arising through the building contract, the bank can make no claim by reason of the assignment.

Henningsen, for we may leave Clive out of consideration, entered into a contract with the United States to construct buildings. The Guaranty Company was surety on that contract. Its stipulation was not merely that the contractor should construct the buildings, but that he should pay promptly and in full all persons supplying labor and material in the prosecution of the work contracted for. He did not make this payment, and the Guaranty Company, as surety, was compelled to and did make the payment. Is its equity superior to that of one who simply loaned money to the contractor to be by him used as he saw fit, either in the performance of his building contract or in any other way? We think it is. It paid the laborers and material-men and thus released the contractor from his obli a-tions to them, and to the same extent released the Government from all equitable obligations to see that the laborers and supply men were paid. It did this not as a volunteer but by reason of contract obligations entered into before the commencement of the work. *Prairie State Bank* v. *United States,* 164 U. S. 227, is in point. In that case Sundberg & Co., in 1888, contracted with the Government to build a custom-house at Galveston. Hitchcock was surety on that contract. On February 3, 1890, in consideration of advances made and to be made by the Prairie Bank, Sundberg & Co. gave a power of attorney to a representative of the bank to receive from the United States the final payment under the contract. In May, 1890, Sundberg & Co. defaulted in the performance of this contract and Hitchcock, as surety, without any knowledge of the alleged rights of the bank, assumed the completion of the contract and disbursed therein about $15,000 in excess of the current payments from the Government. In a contest between Hitchcock and the Prairie Bank it was held that Hitchcock had the superior equity, and the judgment of the Court of Claims in his favor

for the amount still due from the Government was affirmed. The bank loaned to Sundberg & Co. about $6,000 prior to the time that they defaulted in the performance of their contract and prior to any action by Hitchcock in completing the contract or in paying out money, so that the bank actually parted with $6,000 of its money before Hitchcock parted with any of his. It was held that Hitchcock's equity commenced with his obligation in 1888 to see that Sundberg & Co. duly performed their contract with the Government. Mr. Justice WHITE, delivering the opinion of the court, reviewed the authorities at length and discussed the question fully. He said (p. 232):

"Under the principles thus governing subrogation, it is clear whilst Hitchcock was entitled to subrogation, the bank was not. The former in making his payments discharged an obligation due by Sundberg, for the performance of which he, Hitchcock, was bound under the obligation of his suretyship. The bank, on the contrary, was a mere volunteer, who lent money to Sundberg on the faith of a presumed agreement and of supposed rights acquired thereunder. The sole question, therefore, is whether the equitable lien, which the bank claims it has, without reference to the question of its subrogation, is paramount to the right of subrogation which unquestionably exists in favor of Hitchcock. In other words, the rights of the parties depend upon whether Hitchcock's subrogation must be considered as arising from and relating back to the date of the original contract or as taking its origin solely from the date of the advance by him."

It seems unnecessary to again review the authorities. It is sufficient to say that we agree with the views of the Circuit Court of Appeals, expressed in its opinion, in the present case:

"Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money. *Prairie State Bank*

v. *United States*, 164 U. S. 227; *Insurance Company* v. *Middleport*, 124 U. S. 534; Sheldon on Subrogation, § 240." See also *United States Fidelity Co.* v. *Kenyon*, 204 U. S. 349, 356, 357.

The decree of the Circuit Court of Appeals is

*Affirmed.*