**MARYLAND CASUALTY CO. v. DULANEY LUMBER CO. et al.**

**BANK OF RULEVILLE v. MARYLAND CASUALTY CO.**

Circuit Court of Appeals, Fifth Circuit.

January 14, 1928.

No. 4980.

1. **Appeal and error** ⟨⟩781(6)—Where claims of certain claimants were settled, appeal from decree as to them was dismissed.

Where contractor's surety appealed from decree in so far as it was in favor of certain claimants, but their claims had been settled, appeal as to them was dismissed.

2. **Highways** ⟨⟩113(5)—Contractor's bond to insure completion of highway and payment of claims for labor and material became part of contract (Hemingway's Code Miss. 1917, §§ 3734, 3736; Laws Miss. 1918, c. 217).

Bond given to secure performance of contract for construction of public highway and payment of all valid claims for labor and material, as required by Hemingway's Code Miss. 1917, §§ 3734, 3736, and Laws Miss. 1918, c. 217, became essential part of contract.

3. **Subrogation** ⟨⟩36—Notice was imputed to bank dealing with highway contractor, that there was surety, and of surety's rights under contract (Hemingway's Code Miss. 1917, §§ 3734, 3736; Laws Miss. 1918, c. 217).

Since Hemingway's Code Miss. 1917, §§ 3734, 3736, and Laws Miss. 1918, c. 217, required contractor to give bond with surety to insure completion of highway and payment of valid claims for labor and material, notice was imputed to bank, loaning money to contractor and taking assignment of fund due and to become due to contractor, of fact that there was surety, and of surety's rights and obligations under contract, which rights related back to date of bond.

4. **Subrogation** ⟨⟩36—Surety's right to retained percentage is superior to right of bank, advancing money under assignment from contractor taken subsequently, or without notice to surety.

Where performance of contract results in loss, right of surety under its bond to the retained percentage is superior to right of bank, which advances money to contractor under an assignment from contractor taken subsequently, or without notice to surety.

5. **Assignments** ⟨⟩98—Bank, advancing money to highway contractor under assignment of funds due contractor, could not recover of surety, without knowledge of assignment, amount of current estimate paid to contractor and applied by him and surety to bills for labor and material.

Bank, advancing money to highway contractor, *held* not entitled to recover of surety amount of current estimate paid to contractor,

and applied by him and surety in discharge of bills for labor and material, where at time payment was made surety had no knowledge of contractor's assignment to bank of funds due or to become due contractor to secure loan.

6. **Assignments** ⟨⟩90—Bank, loaning money to highway contractor, was entitled under, assignment only to funds payable to contractor.

Bank, loaning money to highway contractor, did not become entitled, under assignment of funds due from highway department, to any funds, except such as were payable to contractor.

7. **Assignments** ⟨⟩104—Labor and material claims were superior to claims held by bank, advancing money to highway contractor under assignments.

Labor and material claims were superior to any claim held by bank, advancing money to highway contractor under assignments of funds due or to become due contractor.

8. **Assignments** ⟨⟩90—Bank, taking assignments from highway contractor, could acquire nothing of value, unless contract resulted in profit.

Bank, advancing money to highway contractor and taking assignment of funds due from highway department, could acquire no higher rights than contractor had, and could not acquire anything of value under assignments, unless contract resulted in profit.

9. **Highways** ⟨⟩113(5)—Where contractor paid labor and material claims, and took assignments of claims to bank, bank could not recover from surety by reason of assignments.

Where highway contractor, after highway was completed and accepted, paid persons holding claims for labor and material by personal checks on bank out of deposit remaining to his credit, and took assignments of claims in favor of bank, bank was not entitled to any relief against contractor's surety by reason of assignments, since law gave no lien on account of claims, and they were in reality paid by contractor with his own funds and thus discharged, and, if bank advanced money, it was to contractor, and not to claimants, and bank had no right to reimbursement.

10. **Highways** ⟨⟩113(5)—Highway contractor's surety held entitled to have amount contractor received for empty cement sacks deducted from materialman's claim for cement consumed.

Highway contractor's surety *held* entitled to allowance of amount received by contractor from sale of empty cement sacks as deduction from materialman's claim for value of cement consumed on highway, since surety was liable only on such claims as were based on labor and material actually furnished and consumed on highway.

Appeals from the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Suit by the Maryland Casualty Company against the Dulaney Lumber Company, the Bank of Ruleville, and others, in which the

bank filed a cross-bill. From the decree, the Bank and the Casualty Company each appeal. Decree affirmed on the Bank's appeal, and reversed and remanded, with directions on the Casualty Company's appeal.

On February 23, 1923, the board of supervisors of Humphreys county, Miss., awarded to John Gerkens a contract for the construction of a public highway, and accepted his bond in the amount of the contract price of upwards of $218,000 to secure performance of the contract and the payment of all valid claims for labor and material. The Maryland Casualty Company became surety on the contractor's bond, and before doing so required him to sign an application by which he assigned to it, for its protection, all equipment and material used in connection with the contract work, and, in the event of his default on the bond, all payments that should be withheld until the completion of the work. That application also provided that the surety, at its option, should be subrogated to all the interest and rights of the contractor under the contract. The highway was constructed by the contractor under the supervision of the state highway department, and accepted by it as being in all respects completed in compliance with the contract. The Mississippi statutes, in force at the time, permitted the making of partial payments to the contractor as the work progressed, where the contract price exceeded $5,000, but provided that in no case of public work should such partial payments exceed 85 per cent. of the value of the work and material, and that final payment of the balance of 15 per cent. should not be made until such work should be completed and accepted. In all public work of this character the contractor was required to give bond, with good and sufficient sureties, conditioned upon performance of the contract (Hemingway's Code of 1917, §§ 3736, 3734), and also conditioned to make payment of all valid claims for labor and material. The bond of a surety company was authorized. Chapter 217, Acts of 1918.

During the progress of the work the contractor became unable to pay his bills for labor and material, and the highway department made two payments that are the subject of the controversy here; one in May of 1924, of $9,000, out of the accumulated retained percentage, and the other in September of 1924, of $10,672.92, out of current estimates. At the time the second of these payments was made the surety had served a copy of the contractor's application for bond with the highway department. Both payments were made with the consent of the surety, and at its instance were deposited to the joint account of itself and the contractor, not in the Bank of Ruleville, where the contractor kept his account, but in other banks, and drawn out and applied in the payment of bills for labor and material.

At the time the contract was entered into, the contractor had on deposit approximately $26,000 to his credit in the Bank of Ruleville, and that bank agreed to lend him sufficient money from time to time to pay claims for labor and material and to complete the contract work, and made various loans, aggregating $266,000. The contractor deposited with it $180,000, received by him from the highway department as current estimates or progress payments. The first loan was for $8,000, made in May of 1923, to secure which the bank took an assignment and gave personal notice thereof to the county board of supervisors. That assignment was also recorded, but there was no provision of law to the effect that such recordation should constitute notice. In October of 1924 the Bank of Ruleville took an additional assignment of funds then due or thereafter to accrue to the contractor from the highway department, but at the time it was made the bank had knowledge of the assignment in favor of the surety that had been served on the highway department. On the other hand, the surety had no knowledge of the first assignment to the bank.

In January and February of 1925, after the highway was completed and accepted, the contractor paid to divers persons holding claims for labor and material sums amounting in the aggregate to $7,467.07, and took assignments thereof in favor of the bank. But these claims were paid by the contractor's personal checks on the bank out of a deposit remaining to his credit, except that there was an overdraft of $84 created by the payment of such checks. Upon the completion of the work there were outstanding claims for labor and material amounting to more than $24,404, which was the balance of the retained percentage that was being withheld by the highway department, and the contractor owed a balance of $34,000 to the Bank of Ruleville.

The surety filed its bill of complaint, in which were named as parties defendant the state highway department, the Bank of Ruleville, and several claimants, including the Dulaney Lumber Company, who had presented to it unpaid bills for labor and material. The bill acknowledged the surety's obligation under its bond to pay all valid claims

for labor and material, but asserted the right to receive and apply on such claims the balance of the retained percentage in the hands of the highway department. In its answer the highway department offered to pay such balance into court for proper distribution.

The bank filed a cross-bill, and prayed for a decree against the surety for the amounts of $9,000 of retained percentage, of $10,672.-92 of current estimates, paid jointly to the contractor and surety, and of $7,467.07, represented by the assignments procured by the contractor to it of claims for labor and material. And the bank further prayed for the payment out of the highway department's deposit in court a balance of some $7,000, which would still be due to it from the contractor. The Dulaney Company answered, and proved that the contractor was indebted to it in the sum of $21,935; but this amount included, not only a claim for cement used in the construction of the highway, but also a claim for sacks in which the cement was shipped, that were not consumed in the work, but were sold by the contractor, who received $3,573.75 in payment therefor. The Dulaney Lumber Company billed the cement and the sacks separately, and allowed credit for such sacks as were returned to it in good condition.

There were other claims allowed against the surety, but they are not here involved. The decree dismissed the bank's cross-bill, and held that the surety was entitled to receive the retained percentage withheld by the highway department, but was liable for the full amount of the Dulaney Lumber Company's claim.

Wm. H. Watkins, of Jackson, Miss. (Geo. F. Cushwa, of Baltimore, Md., and Watkins, Watkins & Eager, of Jackson, Miss., on the brief), for Maryland Casualty Co.

J. Ed. Franklin, of Ruleville, Miss., J. W. Cutrer and Edward W. Smith, both of Clarksville, Miss., and Percy Bell, of Greenville, Miss., for Dulaney Lumber Co., Pidgeon-Thomas Iron Co., Gulf Refining Co., and Bank of Ruleville.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge (after stating the facts as above). [1] The bank appeals, and insists that its equity is superior to that of the surety. The surety appeals from the decree in favor of the Dulaney Lumber Company, which it contends should be reduced by the amount the contractor received upon sales of the empty cement sacks in question. The surety also appeals from the decree in so far as it was in favor of the Gulf Refining Company and the Pidgeon-Thomas Iron Company, but it is made to appear that their claims have been settled, and therefore the appeal as to them is dismissed.

[2-4] The bank's appeal will be considered first. The surety stood in contractual relation to the construction of the highway. The law required the contractor to give bond with surety to insure both the completion of the work and the payment of valid claims for labor and material. The bond thus became an essential part of the contract. The law also required the highway department to retain 15 per cent. of the contract price until the highway was completed. Notice, therefore, was imputed to the bank of the fact that there was a surety, and of its rights and obligations under the contract. Derby v. United States Fidelity & Guaranty Co., 87 Or. 34, 169 P. 500. The rights of the surety related back to the date of the bond. Labbe v. Bernard, 196 Mass. 551, 82 N. E. 688, 14 L. R. A. (N. S.) 457. Where performance of the contract results in a loss, it is the settled general rule in the federal courts that the right of a surety under its bond to the retained percentage is superior to the right of a bank, which advances money under an assignment from the contractor taken subsequently, or without notice to the surety. Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547. That rule has recently been approved in Mississippi. Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1.

[5-8] We are of opinion, also, that the bank is not entitled to recover of the surety the amount of the current estimate paid to the contractor, and applied by him and the surety in discharge of bills for labor and material. At the time that payment was made, the surety had no knowledge of the bank's assignment; and it is not clear from the testimony that the assignment had not been rendered inoperative by payment of the loan for the security of which it was given. The bank's second assignment had not then been secured. But, aside from these considerations, the bank did not become entitled, under either assignment, to any funds except such as were payable to the contractor. Labor and material claims were superior to any claim held by the bank. The surety did not appropriate the current estimate in question to its own use, but merely insisted upon a

proper application of it. If that estimate had remained in the hands of the highway department, the claims of laborers and materialmen, under the public policy that has been established by law in Mississippi, would have been superior to the claim of the bank. The latter could acquire no higher rights than the contractor had. It could not acquire anything of value under the assignment, unless the contract resulted in a profit. The case of First National Bank v. Monroe County, 131 Miss. 828, 95 So. 726, is not inconsistent with the views here expressed. It is true that the equity of a bank, which had taken an assignment from a contractor, was held superior to the equity of the surety. But the surety completed the contract at a profit, and the question of superior equity in the event of loss was not involved.

[9] The bank is not entitled to any relief against the surety by reason of the assignments procured by the contractor of labor and material claims. The law gave no lien on account of these claims, and they were in reality paid by the contractor with his own funds, and thus discharged. If the bank advanced any money, it was to the contractor, and not to the claimants. Under these circumstances, no right to be reimbursed is shown. Union Trust Co. v. Southern Sawmills & Lumber Co. (C. C. A.) 166 F. 193.

[10] As to the surety's appeal on the Dulaney Lumber Company's claim, we are of opinion that the District Judge should have allowed as a deduction the amount received by the contractor from the sale of cement sacks that were not consumed in the work. If the sacks had been consumed in the work, the claim for the full amount would doubtless have been good; but the surety was liable only on such claims as were based on labor and material actually furnished and consumed on the highway.

The decree is affirmed on the bank's appeal, and reversed on the surety's appeal, and the cause is remanded, with directions for further proceedings not inconsistent with this opinion.