### HARDIN COUNTY SAV. BANK v. UNITED STATES.

### MASSACHUSETTS BONDING & INS. CO. v. SAME.

### KELLEHER et al. v. SAME.

Court of Claims.
June 3, 1946.

JONES, Judge, dissenting in part.

Daniel Partridge, III, of Washington, D. C. (Mills & Kilpatrick, of Washington, D. C., on the brief), for plaintiff Hardin County Sav. Bank.

Joseph A. Carey, of Washington, D. C. (Russell Hardy, of Washington, D. C., on the brief), for plaintiff Massachusetts Bonding & Ins. Co.

No appearance for D. M. Kelleher, receiver, and Elmo E. McCormick, trustee in bankruptcy of Ben B. Hogenson's estate.

Newell A. Clapp, of Chicago, Ill., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

This case is now before the court under section 148, Judicial Code, Title 28, U.S. C.A. § 254, on the merits of the conflicting claims of the Hardin County Savings Bank and the Massachusetts Bonding and Insurance Company to a balance of $28,655.12 due in whole or in part to one of these parties under a construction contract between one Ben B. Hogenson and the United States, acting through the Quartermaster Corps, U. S. Army, War Department. See Hardin County Savings Bank et al. v. United States, 102 Ct.Cl. 815.

The contract between Hogenson and the Government was dated June 28, 1941, and called for the construction and completion by Hogenson of a C. M. field office, including the utilities thereto, at the Savanna Ordnance Depot, Proving Ground, Illinois, for a lump sum consideration, as modified, of $42,130. The plaintiff, Massachusetts Bonding and Insurance Company, hereinafter sometimes referred to as the "Bonding Co.," and as the "Surety," became surety on this contract and on July 19, 1941 executed and delivered to the Government a payment bond and a performance bond each in the sum of $21,446 (finding 4). Hogenson entered upon the performance of the contract but was unable to complete the work called for thereby because of financial difficulties and on or about October 19, 1941, the plaintiff, Bonding Co., had to take over and complete the work, and it did so at its own expense under the terms and conditions of its bonds (findings

15-23). Prior thereto and during the last part of July 1941, Hogenson carried on negotiations with plaintiff, Hardin County Savings Bank, hereinafter sometimes referred to as the "Bank," for a loan or loans and agreed to give the Bank, among others, an assignment under his contract with the Government for the Savanna job. Hogenson's formal application for credit was presented to the Bank late in July and the first loan by the Bank of $5,000 was made August 5, 1941, (finding 6) which, together with further loans to and including October 14, 1941, amounted to a total of $20,012.50 (findings 6-13). Certain payments amounting to $6,762.50 on these loans were received by the Bank between October 10 and 18, 1941, as tabulated in finding 13, which reduced the totals of the loans to $13,250, and no further payments have been received by the Bank. In the meantime, as agreed in July, the assignment by Hogenson to the Bank, under authority of article 22 of the Contract and the Assignment of Claims Act of 1940, Act of Oct. 9, 1940, 54 Stat. 1029, 41 U.S. C.A. § 15, was prepared and executed by Hogenson on August 16, 1941 (finding 9). This assignment was, so far as here material, as follows:

"Whereas, Hogenson Construction Company of Belmond, Iowa, has entered into a contract to construct a C. M. Field Office, Savanna Ordnance Depot, Proving Ground, Illinois, which building is now in the process of construction, and which has not yet been finally accepted, by the Government of the United States of America, and

"Whereas, Ben B. Hogenson desires to assign all funds now due or to become due, including both the retained percentage and all monthly estimates under said contract to the Hardin County Savings Bank, of Eldora, Iowa, for the purpose of obtaining credit at said bank.

"Now, Therefore, the Constructing Quartermaster, Savanna Ordnance Depot, Proving Ground, Illinois, is hereby directed to make payment of all funds due and to become due under said contract, to the Hardin County Savings Bank, of Eldora, Iowa, at such times as the said retained per-centage and monthly estimates shall, by the terms of said contract, the completion of the work, and the payment of claims for material and labor, become due and payable."

Article 16 of Hogenson's contract provided that "partial payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the contracting officer," less 10 percent of each estimate to be retained until final completion and acceptance of all work. This article further provided that "upon completion and acceptance of all work required hereunder, the amount due the contractor under this contract will be paid upon the presentation of a properly executed and duly certified voucher * * *." Hogenson's operations under the Government contract for the Savanna job continued until sometime during the week of October 15-22, when work under the contract stopped and Hogenson's employes left the job because Hogenson was without funds and the plaintiff Bank had stopped payment on certain payroll checks which had been given by Hogenson because Hogenson's funds in the bank had been exhausted. A number of subcontractors were unable to meet their pay rolls.

At this point the plaintiff Bonding Company, upon finding that Hogenson could not and did not intend to complete the work, began making arrangements to take over and complete the contract and was advised by the constructing officer about October 22 (finding 19), "that there was nobody on the job and that unless something was done immediately the army would have to make arrangements to take over the job and have it completed, or to complete the job itself."

Pursuant to the assignment of August 16, supra, defendant paid to the plaintiff Bank progress payment estimates Nos. 1, 2 and 3, totaling $13,474.88, for work performed and material placed on the job by Hogenson prior to his default in the amounts of $4,566.33 on September 3; $2,-109.46 on September 9, and $6,799.09 on October 8, 1941, and, with the exception of $6,312.50 out of progress payment No.

3, the Bank placed these three payments to Hogenson's credit in his checking account in that bank. On October 18, 1941, before any further progress estimate and payment under Hogenson's contract was prepared or was due by the Government, plaintiff Bank, as its president testified, became nervous about Hogenson's financial condition and when it "found out that he [Hogenson] was busted on October 18th," it thereupon closed out Hogenson's checking account in the Bank by crediting the balance of $450 therein to the unpaid loans. This, with the other credits on the loans from progress payment No. 3, supra, which had been made October 10, 1941, left a balance of $13,250, not including interest, due and unpaid by Hogenson on account of loans totaling $20,012.50 between August 5 and October 14, 1941.

It is this amount of $13,250 plus interest from March 31, 1942, until paid, at the rate of 7 percent per annum, as provided in Hogenson's notes, which plaintiff Bank seeks to recover out of the contract balance of $28,655.12 in defendant's hands. The balance of Hogenson's indebtedness to the Bank plus interest at 7 percent from March 31, 1942, to June 3, 1946 (date of judgment), is $17,122.58.

The question presented by the facts of this case, so far as the Bank's rights under the assignment are concerned, is the same in principle as the question presented and decided in the case of Modern Industrial Bank v. United States, 101 Ct.Cl. 808. In that case the contractor, after commencing work about July 15, 1941, made an assignment on August 5, similar in all respects to the assignment here involved, of "all monies due or to become due from the United States." This assignment was made to the Industrial Bank as security for a loan and on the basis of which the Bank advanced a total of $38,500 to the contractor between August 8 and October 8, 1941. The assignee received from the Government a total of $20,409.01 on two progress payments, approved by defendant, showing that amount to be due and payable to the contractor for work performed and material furnished for the period July 15 to September 16, 1941. On October 7, 1941, progress and partial payment estimate No.

3 was prepared by defendant's superintendent and construction engineer, and signed by the contractor's representative, for work performed during the period September 16 to October 11, 1941, showing a net amount of $21,809.98 as earned for such period. However, this partial payment estimate No. 3 was not approved for payment by the contracting officer, but was withheld on his order because the contractor's progress toward completion of the work was unsatisfactory, and on October 14, 1941, he terminated the contractor's right to proceed further with the work. Upon advice from the surety on the contractor's bond that it did not desire to take over and complete the work, defendant relet the contract on November 12, 1941. The Industrial Bank, as assignee, demanded payment to it by defendant of $19,622.68 of the net amount of $21,809.98 which had been earned by the contractor and which the Bank claimed was due and payable to it as assignee for work performed by the assignee contractor prior to declaration of default. Defendant declined to pay any portion of said earned amount of $21,809.98 to the bank, but instead used and applied it, together with the total of the retained amounts of 10 percent on the prior payments, on the cost of completion of the work called for by the original contract and damages sustained by reason of delayed completion. After deducting from the original contract price of $74,389.03 the two partial payments totaling $20,409.01 paid to the Industrial Bank as assignee, the cost of completion of $46,848, plus actual damages of $3,233.35 sustained by defendant for delay, there remained a balance of $3,898.67 of the original contract price as representing the value to the contract work of the unused portion of the total amount earned by the original contractor for work performed prior to October 14, 1941.

The Industrial Bank claimed, as plaintiff Hardin County Savings Bank here claims, that as assignee of all amounts payable under the contract it was entitled under such assignment and the Assignment of Claims Act of 1940 to be repaid the amount of its loans out of the contract price; that the Government should have looked to the surety on the contractor's bond for the cost

of completion; that the bank's rights as assignee were superior to those of the surety and that the Government did not have the right to use the amount of the contract price earned by the contractor and remaining unpaid upon the contractor's default in such a way as to cause such fund to enure to the benefit of the surety. In denying this claim we held that the Bank, as assignee, acquired no greater rights in respect of amounts due under the contract than its assignor, the contractor, had and that the right of the assignee to demand payment by the Government of an amount due from it for work performed under the contract was subject to performance by the contractor of his contractual obligations.

■ The decision in the Modern Industrial Bank case is applicable on the facts of the case at bar and the surety, Massachusetts Bonding and Insurance Co., having stepped in and completed the contract work upon default of the original contractor, is entitled, as against the plaintiff Hardin County Savings Bank, as assignee of the contractor, to recover the balance due from the Government under the contract for performance of the work called for thereby. Since the Government might have used and applied the earned as well as the unearned portion of the contract price toward completion, the surety having completed the work called for by the contract is entitled to the balance of the contract price due.

In Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 232, 233, 239, 240, 17 S.Ct. 142, 144, 41 L.Ed. 412, the court said:

" * * * The sole question, therefore, is whether the equitable lien, which the bank claims it has, without reference to the question of its subrogation, is paramount to the right of subrogation which unquestionably exists in favor of Hitchcock [the surety]. In other words, the rights of the parties depend upon whether Hitchcock's subrogation must be considered as arising from, and relating back to the date of, the original contract, or as taking its origin solely from the date of the advance by him.

"A great deal of confusion has arisen in the case by treating Hitchcock as subrogated merely 'in the rights of [the contractor] Sundberg & Co.' in the fund, which, in effect, was saying that he was subrogated to no rights whatever. Hitchcock's right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) was capable of asserting against its debtor, Sundberg & Co., had the security not satisfied the obligation of the contractors; and one of such remedies was the right based upon the original contract, to appropriate the 10 per cent. retained in its hands. If the United States had been compelled to complete the work, its right to forfeit the 10 per cent. and apply the accumulations in reduction of the damage sustained remained. The right of Hitchcock to subrogation, therefore, would clearly entitle him, when, as surety, he fulfilled the obligation of Sundberg & Co., to the government, to be substituted to the rights which the United States might have asserted against the fund.

\* \* \* \* \* \*

"The argument, however, that the advances beyond the stipulations of the contract were calculated to be beneficial to the sureties, can be of no avail.

\* \* \* \* \* \*

"Applying the principles, which are so clearly settled by the foregoing authorities, to the case at bar, it is manifest that if the transaction in February, 1890, by which the Prairie Bank acquired its alleged lien on the fund possessed the effect contended for by the bank, it would necessarily operate to alter and impair rights acquired by the surety under the original contract.

"Sundberg & Co. could not transfer to the bank any greater rights in the fund than they themselves possessed. Their rights were subordinate to those of the United States and the sureties. Depending, therefore, solely upon rights claimed to have been derived in February, 1890, by express contract with Sundberg & Co., it necessarily results that the equity, if any, acquired by the Prairie Bank in the 10 per

cent. fund then in existence and thereafter to arise was subordinate to the equity which had, in May, 1888, arisen in favor of the surety, Hitchcock. It follows that the Court of Claims did not err in holding that Hitchcock was entitled to the fund, and its judgment is therefore affirmed."

See, also, to the same effect Henningsen v. United States Fidelity and Guaranty Company of Baltimore, Maryland, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Hardaway v. National Surety Co., 211 U.S. 552, 29 S.Ct. 202, 53 L.Ed. 321; Martin v. National Surety Co. et al., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; Maryland Casualty Co. v. Dulaney Lumber Co. et al., 5 Cir., 23 F.2d 378, 380; Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48, 53; Morgenthau et al. v. Fidelity & Deposit Co. of Maryland, 68 App.D.C. 163, 94 F.2d 632; Standard Accident Ins. Co. of Detroit, Mich. v. Federal National Bank of Shawnee. 10 Cir., 112 F.2d 692, 694.

It is unimportant, so far as the rights of the claimants are concerned, that in the instant case the Government had not formally declared the contractor, Hogenson, in default. Maryland Casualty Co. v. Dulaney Co., supra. He had in fact defaulted on or prior to October 19, 1941, at a time when no amount was due and payable to him- and had stopped work before the plaintiff Bonding Co., took over the work, and this fact was known to the Bonding Company, the Bank, and the Government. The plaintiff Bonding Co., as surety under the contract, completed the work at a cost, including payment of defaulted obligations for labor and material, of $31,022.75, which was more than the unpaid balance of the original contract price of $28,655.12. Under the uniform rule established and consistently followed in the cases hereinbefore cited, the plaintiff Massachusetts Bonding and Insurance Company was entitled to the payment of this balance, and it is therefore entitled to recover the same in this action.

■ The plaintiff Bank says that by the provision in the Assignment of Claims Act of 1940, 54 Stat. 1029, 41 U.S.C.A. § 15, that "Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to the Assignment of Claims Act of 1940 shall constitute a valid assignment for all purposes," Congress intended that the rights of an assignee should be held superior to those of the surety on the contractor's undertakings to the extent of advances made by the assignee. We cannot agree. We have examined the history of the act and find nothing in it which shows that by this provision Congress intended anything more than that an assignee should "stand in the shoes" of the assignor, and that an assignment made in conformity with the act should not be declared invalid because of the provisions of R.S. Sections 3477 and 3737, 31 U.S.C.A. § 203; 41 U.S.C.A. § 15. An assignment by a contractor may be valid for all purposes but inoperative to extinguish the contractual rights of the Government and those of the surety on the contractor's bond. It cannot, therefore, be said that Congress intended to overturn the rule of law announced and applied in the decided cases and give an assignee greater rights than he would have had if Sections 3477 and 3737 R.S. had not been enacted. It had been established before the Assignment of Claims Act of 1940 was enacted that a contractor could not by an assignment of amounts due under his contract convey any greater rights with respect thereto than he possessed under his contract and that an assignee making advancements on the faith of such assignment assumed the risk incident to the failure of such contractor to fulfill his contractual obligations; it would, therefore, require clear and specific language to justify the conclusion that Congress intended by the act of 1940 to legislate to the contrary.

The above quoted provision that an assignment pursuant to the provisions of the act should "constitute a valid assignment for all purposes" was doubtless intended to prevent a technical interpretation of the act and to avoid situations such as were involved in National Bank of Commerce v. Downie, Trustee, 218 U.S. 345, 356, 357, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116, where it was held that by reason of Section 3477 R.S., an assignment by a contractor, who had completed his contract with the Government, of amounts payable

to him under the contract was not a valid assignment as against general creditors of the contractor in bankruptcy. In that case the court, 218 U.S. at pages 356, 357, 31 S.Ct. at page 92, said:

" * * *. In Erwin v. United States, 97 U.S. 392, 397, 24 L.Ed. 1065, 1067, this court, speaking by Mr. Justice Field, after referring to the act of 1853 embodied now in § 3477 of the Revised Statutes, to prevent frauds upon the Treasury, said that it 'applies only to cases of voluntary assignment of demands against the government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy are not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims.' * * *

"The present cases are not assignments which, by operation of law, created an interest in the assignor's claims against the United States. They are clean-cut cases of a voluntary transfer of claims against the United States, before their allowance, in direct opposition to the statute. If any regard whatever is to be had to the intention of Congress, as manifested by its words,—too clear, we think, to need construction,—we must hold such a transfer to be absolutely null and void, and as not, in itself, passing to the appellants any interest, present or remote, legal or equitable, in the claims transferred. The result is that when Gamwell & Wheeler were adjudged bankrupts, they were *still in law the owners of these claims on the United States,* and all interest therein passed under the bankrupt act to their general creditors, to be disposed of as directed by the bankrupt act, just as if there had been no attempt to transfer them to the banks. * * *"

█ Prior to the date on which the Comptroller General transmitted this case to the court for adjudication pursuant to Section 148 of the Judicial Code, as amended, 28 U.S.C.A. § 254, D. M. Kelleher, Receiver of the estate of Ben B. Hogenson in an involuntary bankruptcy proceeding filed notice with the Chief of Finance, U. S. Army, of such proceeding and made demand for payment to him, as such receiver, of the balance due from the Government under Hogenson's contract. Elmo E. McCormick was subsequently appointed Trustee in Bankruptcy. Upon motion of the Attorney General the Trustee in Bankruptcy was given due notice and an opportunity to be heard herein under section 14(b), act of July 1, 1944, 58 Stat. 663, 41 U.S.C.A. § 114(b). See 102 Ct.Cl. 815. He has not responded by filing a petition or claim herein. Any claim by the Trustee with respect to the fund involved in this case and any interest therein which the estate of Ben B. Hogenson in bankruptcy may have are, therefore, forever barred under the express provisions of the act of July 1, 1944, supra.

The Hardin County Savings Bank is not entitled to recover and its petition is dismissed.

The Massachusetts Bonding and Insurance Company is entitled to recover the balance due from the Government under its contract with Ben B. Hogenson, and judgment will be entered in favor of the plaintiff for $28,655.12. It is so ordered.

WHALEY, Chief Justice, and WHITAKER, Judge, concur.

JONES, Judge (dissenting in part).

I would permit the plaintiff, Hardin County Savings Bank, to recover the amounts which the contractor had earned and which had not been paid to him for work performed by such contractor, and which were covered by assignments to such bank.

MADDEN, Judge, took no part in the decision of this case.