**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff,

v.

**APAC–KANSAS, INC., Defendant and Counter Claimant,**

v.

**United States Fidelity And Guaranty Company, et al., Defendants.**

No. 00–2076–JWL.

United States District Court,
D. Kansas.

March 6, 2001.

**1298**

Keith Witten, Bernard L. Balkin, Sandler, Balkin, Hellman & Weinstein, Kansas City, MO, for U.S. Fidelity and Guaranty Co., St. Paul Ins. Co.

Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, Robert A. Henderson, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, Ryan J. Rohlfsen, Chicago, IL, for APAC-Kansas, Inc.

Reid F. Holbrook, Holbrook, Heaven & Osborn, P.A., Kansas City, KS, Kurt S. Brack, Holbrook, Heaven & Osborn, P.A., Merriam, KS, for Clarkson Constr. Co., Inc.

Kim S. Summers, Dysart, Taylor, Lay, Cotter & McMonigle, P.C., Kansas City, MO, for Construction Anchors.

Keith J. Shuttleworth, Cohen McNeile Pappas & Shuttleworth P.C., Leawood, KS, for McCray Lumber Co., Inc.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this case the court is called upon to determine the party with the superior right to interpleader funds deposited with the court. Presently before the court are plaintiff, United States Fidelity and Guaranty Company's (USF & G), motion for summary judgment (Doc. 67) and the counterclaim defendant, Clarkson Construction Company's (Clarkson) motion for summary judgment (Doc. 69). For the reasons set forth below, Clarkson's motion is denied and summary judgment is granted in favor of United States Fidelity and Guaranty Company (USF & G).

## I. Statement of Uncontroverted Facts

Based on the parties' stipulation, the court finds that the following facts are uncontroverted.

During the years 1997 and 1998, APAC–Kansas, Inc. (APAC) entered into certain subcontracts with the now-bankrupt Mabin Construction Company (Mabin) for the performance of certain construction work for agreed contract prices on three projects. Two of these projects were under contract with the Missouri Department of Transportation and one was under contract with the Kansas Department of Transportation. Pursuant to these subcontracts, Mabin, as principal, and USF & G, as surety, issued payment and performance bonds to APAC, as obligee, for the projects. When Mabin failed to fully perform its work and to pay its subcontractors and suppliers for labor and materials furnished for the projects, APAC made demand upon USF & G, as surety, to pay the claims of Mabin's subcontractors and suppliers for labor and materials furnished to the projects. USF & G has paid these claims in amounts totaling $197,769.28. APAC has deposited with the court a total of $111,533.97, representing the unpaid contract balances earned and unpaid under the above described Mabin subcontracts. USF & G claims a superior right to the interpleader funds based on the doctrine of equitable subrogation. Clarkson Construction Company (Clarkson), as assignee of a perfected security interest in the accounts receivable of Mabin Construction, claims that it is entitled to the interpleader funds based on its perfected security interest in Mabin's accounts receivable.

Neither party disputes that the interpleader fund deposited with the court is

the whole balance due under the original APAC–Mabin contracts for these three projects.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)(citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material if, under the applicable substantive law", it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

Both parties to this action have moved for summary judgment and neither has set forth specific facts from which a rational trier of fact could find for that party. Additionally, USF & G and Clarkson have stipulated that there remain no ultimate and controlling issues of fact in dispute. (*See* Section 7 of the Pretrial Order entered by the court on November 8, 2000.) Therefore, summary judgment is appropriate.

● Choice of Law

Both parties acknowledge that the Missouri contracts are governed by Missouri law and that the Kansas contract is governed by Kansas law. Cases from both states have followed principles announced in federal cases and the parties, in their motions for summary judgment, cite state and federal authority for the legal principles asserted. The law seems well settled on the material points at issue.

## IV. Discussion

█ Plaintiff points the court's attention to a long history of American jurisprudence recognizing and establishing the right of a surety by subrogation to unpaid contract balances on its bonded projects where there has been a default by the principal, a demand by the obligee, and performance by the surety pursuant to the suretyship obligation. *See, e.g., Prairie State National Bank v. United States*, 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *United States Fidelity & Guaranty Co. v. First State Bank of Salina*, 208 Kan. 738, 494 P.2d 1149 (1972); *National Surety Corporation v. Fisher*, 317 S.W.2d 334 (Mo.1958). Counterclaim defendant Clarkson, while acknowledging a surety's general equitable right to subrogation, attempts to distinguish this case from those finding the surety's right to subrogation based on 1) USF & G's failure to file a security interest under the UCC and 2) the fact that Clarkson perfected its security interest prior to the issuance of USF & G's surety bonds. Clarkson first argues that USF & G could have filed to perfect a security interest in the disputed funds and that, since it chose not to, it should be barred from asserting a claim based in equity. Clarkson provides no authority for this proposition, however, and the court finds the argument unpersuasive.

█ The surety's right of equitable subrogation arises by operation of law, rather than by the consent of the parties.

*Martin v. National Surety Co.,* 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937)(observing that a bond required by statute was a confirmation and adoption of that statutory duty); Restatement (Third) of Suretyship and Guaranty, § 31 (1996) (recognizing the surety's subrogative right to contract balances). A decision concerning priority based on time of filing, or based on failure to file would undermine this equitable principle. Therefore, courts in Kansas and Missouri have recognized that the surety's right of equitable subrogation is not dependent upon recording, i.e., filing under the UCC. *United States Fidelity & Guaranty Co. v. First State Bank of Salina,* 208 Kan. 738, 749–51, 494 P.2d 1149, 1157–59 (1972)(*citing, e.g., United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* 186 Kan. 637, 643, 352 P.2d 70 (1960), *Fenly v. Revell,* 170 Kan. 705, 709, 228 P.2d 905 (1951)); *In re J.V. Gleason Co.,* 452 F.2d 1219, 1221 (8th Cir. 1971).

Counterclaim defendant also asks this court to distinguish the long history of authority finding the rights of a surety superior to that of a perfected secured creditor based on the operative dates on which the interest of the surety arose. Under the facts of the instant case, the security interest held by Clarkson as assignee was perfected before the surety bonds were executed between APAC–Kansas and USF & G, as surety. Clarkson argues that, in each of the cases finding for the surety, the interest of the surety predated the interest of the lender and that this fact is crucial. *Prairie State National Bank v. United States,* 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Henningsen v. United States Fidelity & Guaranty Co.,* 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), *United States Fidelity & Guaranty Co. v. First*

*State Bank of Salina,* 208 Kan. 738, 494 P.2d 1149 (1972); *First State Bank v. Reorganized School District R–III, Bunker,* 495 S.W.2d 471 (Mo.App.1973) (finding that the surety's equitable right of subrogation was superior to the rights of one who takes by assignment from the contractor after the execution of the bond). This court is unpersuaded.

■ Although in the majority of federal, Kansas, and Missouri cases cited for the proposition that the surety has priority to retainage funds based on equitable subrogation, the execution of the surety bond did predate the bank's security interest, the court does not find that fact controlling. The United States Supreme Court has stated the doctrine's requirements as "(1) that the person seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc." *Prairie State National Bank,* 164 U.S. at 231, 17 S.Ct. 142 (*citing Insurance Co. v. Middleport,* 124 U.S. 534, 8 S.Ct. 625, 31 L.Ed. 537 (1888)). Clarkson has not cited, nor has this court found, any authority requiring that the surety's interest predate another creditor's interest for the doctrine of equitable subrogation to control.

This proposition is also consistent with the views of leading commentators. Professor Barkley Clark, in his treatise, The Law of Secured Transactions Under the Uniform Commercial Code, Revised Edition 1993, at ¶ 1.07, pages 1–84 through 1–89, states, "Not a single reported decision gives priority to the Article 9 financer in its battle with the surety for the retainage fund. It makes no difference whether the

surety files a financing statement or if the surety bonds are executed before the financer's security interest is perfected." Law review authors also support the proposition that the priority to the retainage fund does not depend on when the bonds were executed and filed. *See, e.g.,* Walt, Steven & Sherwin, Emily L., Contribution Arguments in Commercial Law, 42 Emory L.J. 897, 905–912 ( "Without subrogation, the bank probably would prevail over the surety, at least if it were the first party to perfect a security interest.... With a right of subrogation, however, the surety can climb ahead of the bank by asserting the owner's right to damages for breach of contract.")

■ The surety's obligation on a bond is limited to the loss suffered by the owner/obligee. Since any unpaid contract funds would have been available to the owner to limit or reduce its loss, principals of equity demand that the funds be given to the performing surety. Notwithstanding the chronology of execution of the surety bonds in relation to a bank's security interest in a contractor's accounts, upon default, the surety "steps into the shoes" of the owner, while the bank's rights do not attach until the funds reach the contractor, giving priority to the surety. *See, generally, Prairie State National Bank v. United States,* 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Henningsen v. United States Fidelity & Guaranty Co.,* 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.,* 411 F.2d 843 (1st Cir.1969); *United States Fidelity & Guaranty Co. v. First State Bank of Salina,* 208 Kan. 738, 494 P.2d 1149 (1972); *First State Bank v. Reorganized School District R–III, Bunker,* 495 S.W.2d 471 (Mo.App.1973).

■ Finally, it should be noted that in both Kansas and Missouri, payment and completion bonds are required by statute. Kan.Stat.Ann. § 68–410 (1999); Mo.Rev. Stat. 227.100 (2000). The original secured, party, as well as Clarkson, as assignee, had constructive notice that Mabin would be obtaining surety bonds on any government contracts to which it became a party. The Supreme Court has offered the view that, "[i]f one, with perfect knowledge of the facts, will part with his money, ... any rule of law which would restore him his money ... would subvert the rules of social order." *Prairie State National Bank,* 164 U.S. at 231–32, 17 S.Ct. 142. Professor Barkley Clark agrees. "Once the priority conflict is taken outside the confines of Article 9, [priority] should be given to the surety, even when the bonds are executed after the bank's security interest is perfected. As a matter of public policy, ... those who finance construction contractors are usually aware that a surety is in the picture, especially when payment and completion bonds are required by statute ..." The Law of Secured Transactions Under The Uniform Commercial Code, Revised Edition 1993, at ¶ 1.07, page 1–85. Clarkson had constructive notice that surety bonds would be issued on any government contracts entered into by Mabin, so, with regard to any future government contracts, Clarkson took a security interest in Mabin's accounts receivable at its peril.

This court finds that neither USF & G's failure to file under the Uniform Commercial Code nor the fact that Clarkson's perfected security interest predated USF & G's surety bonds are controlling factors in this case. Under the applicable law of both Kansas and Missouri, the equitable right of subrogation demands that priority to the disputed funds be awarded to USF & G.

IT IS THEREFORE ORDERED BY THE COURT THAT counterclaim defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED THAT summary judgment is granted in favor of the plaintiff.

IT IS SO ORDERED this —— day of March, 2001.