PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: BALTIMORE MARINE
INDUSTRIES, INCORPORATED,

*Debtor.*

ALAN M. GROCHAL,

*Appellant,*

and

MAERSK LINE, LIMITED; MILITARY
SEALIFT COMMAND,

*Plaintiffs,*

v.

OCEAN TECHNICAL SERVICES
CORPORATION; MCALLISTER
TOWING OF BALTIMORE,
INCORPORATED,

*Defendants-Appellees.*

No. 06-1206

In Re: BALTIMORE MARINE
INDUSTRIES, INCORPORATED,

*Debtor.*

ALAN M. GROCHAL, Liquidating
Agent,

*Appellant,*

v.

OCEAN TECHNICAL SERVICES
CORPORATION; MCALLISTER
TOWING OF BALTIMORE,
INCORPORATED,

*Defendants-Appellees.*

No. 06-1207

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:05-cv-01441-WDQ; 1:05-cv-02102-WDQ; BK-03-80215-JS;
AP-03-08154-JS; AP-04-01871-JS)

Argued: December 1, 2006

Decided: February 9, 2007

Before MOTZ and TRAXLER, Circuit Judges, and
David A. FABER, Chief United States District Judge
for the Southern District of West Virginia,
sitting by designation.

Vacated and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Traxler and Judge Faber joined.

**COUNSEL**

**ARGUED:** Alan M. Grochal, TYDINGS & ROSENBERG, Baltimore, Maryland, for Appellant. Robert K. Gross, EATON & VAN WINKLE, New York, New York, for Appellees. **ON BRIEF:** Alan Van Praag, EATON & VAN WINKLE, New York, New York, James W. Bartlett, III, Alexander M. Giles, SEMMES, BOWEN & SEMMES, P.C., Baltimore, Maryland, for Appellee Ocean Technical Services Corporation; J. Stephen Simms, SIMMS SHOWERS, L.L.P., Baltimore, Maryland, for Appellee McAllister Towing of Baltimore, Incorporated.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal from a bankruptcy court order raises the question whether unpaid subcontractors have an absolute right to interpleaded funds owed to a government contractor, when the contractor has petitioned for bankruptcy. The courts below awarded the funds directly to the subcontractors and thus excluded the sums from the contractor's bankruptcy estate. Because the funds constitute part of the bankruptcy estate of the contractor, we must vacate and remand for further proceedings.

I.

Baltimore Marine Industries, Inc. (BMI) owned a full-service shipyard engaged in ship repair and reconditioning. BMI agreed with Maersk Line, Ltd., the operator of the *M/V PFC William B. Baugh* (a ship owned by the United States), to repair the ship. BMI then subcontracted with, *inter alia*, Ocean Technical Services Corp. (OTS) for the latter to provide skilled labor for work on the *Baugh*. BMI and its subcontractors completed work on the *Baugh* and Maersk accepted redelivery of the ship.

On June 11, 2003, BMI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Maryland. On July 31, 2003, Maersk filed an interpleader action in the bankruptcy court, seeking to deposit $270,357.74, the amount it owed BMI for repair of two ships; of that sum, $245,989.95 was for work on the *Baugh*. The contract between Maersk and BMI allowed Maersk to retain ten percent of progress payments until completion of the project, but it is unclear what portion (if any) of the interpleaded sum represents these retained funds. OTS, the subcontractor, filed a claim against the interpleaded funds for $110,405, asserting that BMI owed it that amount for its work on the *Baugh*. Other parties either asserted claims against the funds and later settled with BMI or waived any claim they may have had to the funds by failing to answer the interpleader complaint.

The court had appointed Alan M. Grochal to serve as the Liquidating Agent for BMI in its ongoing bankruptcy proceedings. Accordingly, Grochal was substituted for BMI as the proper party in the interpleader action.

OTS and Grochal each moved for summary judgment. Grochal argued that the funds were part of the bankruptcy estate and that OTS "[did] not possess any lien or right in the Interpleaded Funds, equitable or otherwise, that would entitle [it] to priority over BMI's bankruptcy estate or other creditors of BMI." OTS contended that the interpleaded funds were excluded from the bankruptcy estate and should be awarded directly to OTS in payment for the work it had performed on the *Baugh*.

The bankruptcy court agreed with OTS. It ordered that $110,405, plus prejudgment interest and costs, be paid directly to OTS from the interpleaded funds and excluded from the bankruptcy estate. The court found it was undisputed that OTS had not been paid, and also found that "[t]he purpose of the fund in question is to protect the unpaid materialmen and subcontractors." It reasoned that *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132 (1962), "control[led] the rights of unpaid materialmen and subcontractors" and required the conclusion that OTS had "the right to the fund." Accordingly, the court ordered that $110,405 be awarded directly to OTS and excluded from the bankruptcy estate. The court made clear that it viewed the question as "not one of priorities under the Bankruptcy Code but . . . whether the liquidating agent in a bankruptcy case can administer

property that is not that of the debtor." The district court affirmed for essentially the same reasons.[1]

We review the judgment of a district court sitting in review of a bankruptcy court *de novo*, applying the same standards of review applied by the district court. Thus, we review the bankruptcy court's factual findings for clear error and its decisions of law *de novo*. *Devan v. Phoenix Am. Life Ins. Co. (In re Merry-Go-Round Enters., Inc.)*, 400 F.3d 219, 224 (4th Cir. 2005).

## II.

Section 541 of the Bankruptcy Code governs the composition of the bankruptcy estate and provides a broad definition of "[p]roperty of the estate." 11 U.S.C.A. § 541 (West 2006); *see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205-06 (1983) (recognizing "broad scope of [the] reorganization estate"); *Tignor v. Parkinson*, 729 F.2d 977, 980 (4th Cir. 1984) (explaining that § 541 includes within the bankruptcy estate "all kinds of property, including tangible or intangible property" (internal quotation marks omitted)). Subject to exceptions not relevant here, § 541 mandates that the bankruptcy estate contain "*all* legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (emphasis added). Amounts owed to the debtor under existing contracts are included within the estate. *Ralar Distribs., Inc. v. Rubbermaid, Inc. (In re Ralar Distribs., Inc.)*, 4 F.3d 62, 67 (1st Cir. 1993). Not only was the contract in this case in place at the time BMI filed for bankruptcy protection, but also prior to that filing BMI had performed the work required under the contracts. Consequently, § 541 would seem to require that BMI's interests in these funds constitute part of BMI's bankruptcy estate.

---

[1]BMI also contracted with OTS and McAllister Towing, Inc. for work on other government ships. The bankruptcy and district courts reached the same result with respect to claims arising out of those contracts in a related interpleader proceeding; on appeal, the parties waived oral argument in that case, No. 06-1207. Because the principles articulated in this opinion also control our decision in 06-1207, we vacate the district court's order in that case and remand for proceedings consistent with the principles articulated in this opinion.

The bankruptcy court apparently believed that BMI had no interest in the funds — legal or equitable — because under *Pearlman*, 371 U.S. 132, OTS had an *absolute* right to the interpleaded funds; it was mistaken. This application of *Pearlman* rests on a faulty premise — that unpaid subcontractors enjoy the same rights as the surety in *Pearlman*.

In *Pearlman*, the Government had hired a contractor for a public works project. As required by statute, the contractor had obtained two bonds through a surety: one to guarantee completion of the work and the other to guarantee payment of laborers and suppliers.[2] *Id.* at 133. Pursuant to its agreement with the contractor, the Government retained a set percentage of the amount due monthly, to be paid upon completion of the project. *Id.* at 133-34. Before finishing the work, the contractor ran into financial problems and the Government terminated the agreement. *Id.* at 134. The contractor's surety then paid the unpaid laborers and suppliers the amounts that they were owed. *Id.* After another contractor finished the project, the Government paid the previously retained funds to the first contractor. *Id.* Because that contractor had filed for bankruptcy, the bankruptcy trustee took possession of the retained funds. *Id.* The surety sued, claiming that it owned the funds — that ownership had never vested in the bankrupt contractor or its trustee. *Id.*

In resolving this question, the Supreme Court focused on whether, and to what extent, the surety had a property interest in the retained funds, reasoning that "[t]he Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." *Id.* at 135-36.[3] It noted that no statute "expressly declare[d]

---

[2]Notwithstanding this requirement, *see* 40 U.S.C.A. § 3131 (West 2006), BMI was apparently not required to provide surety bonds in this case. The Secretary of the Navy has authority to waive the bonding requirement "with respect to contracts for . . . repairing . . . vessels," 40 U.S.C.A. § 3134 (West 2006), which might explain the absence of any bond in this case.

[3]As Grochal points out, the Supreme Court decided *Pearlman* under the Bankruptcy Act, which contained a narrower definition of "property of the estate" than that set forth in the Bankruptcy Code. *See Whiting Pools*, 462 U.S. at 205-06. However, the Supreme Court has cited *Pearl-*

that a surety does acquire a property interest" in such a fund. *Id.* at 136. Therefore, the Court looked to prior judicial decisions establishing a surety's rights and found "beyond dispute" that "sureties compelled to pay debts for their principal have been deemed entitled to reimbursement" and that "a surety who pays the debt of another is entitled to all the rights of the person he paid." *Id.* at 136-37. The Court concluded:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it.

*Id.* at 141. In recognition of the surety's right to the funds, the Court awarded those funds directly to the surety, bypassing the bankruptcy estate. *Id.* at 141-42.

The right of a surety like that in *Pearlman* — who has fully paid all subcontractors — to retained funds is greater than that of an unpaid subcontractor, like OTS, because the surety *combines* the subcontractor's interest in the funds with those of the Government and the general contractor. *See id.* at 141. Unlike an unpaid subcontractor, a surety steps into the shoes of the general contractor and thus acquires his legal title and any other rights he has to the withheld funds, legal and equitable. *See id.* at 137-42. The surety in *Pearlman* possessed all of the rights that the bankrupt contractor would other-

---

*man* since enactment of the Bankruptcy Code, without questioning its validity. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 264 (1999). In this case, we can distinguish *Pearlman* solely on the basis of the difference in rights possessed by OTS and those possessed by the surety in *Pearlman*. We need not and do not rely on the statutory change in the definition of "property of the estate" or suggest that *Pearlman* is no longer good law.

wise have had; thus the bankrupt contractor was left with no interest that could become part of the bankruptcy estate. In contrast, unpaid subcontractors, like OTS, possess literally a fraction of such a surety's rights. *See id.* at 141. Because an unpaid subcontractor is not subrogated to the contractor's interest in the funds, the contractor's interest remains and must be included in the bankruptcy estate. Consequently, the bankruptcy court and district court erred in relying upon *Pearlman* to award the interpleaded funds directly to OTS.

We note that in so holding, those courts cited several appellate cases applying *Pearlman*. On examination, these cases involve very different facts. None provide authority for awarding the interpleaded funds directly to OTS. Indeed, in the most recent of those cases, the Third Circuit held that "funds owed by the federal agencies to [a bankrupt contractor] should be paid to [it] as debtor in possession pursuant to the broad language of section 541 of the Code." *Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.*, 960 F.2d 366, 376 (3d Cir. 1992); *see also O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 958-59 (9th Cir. 1989) (holding that bankruptcy trustee for contractor could not avoid pre-petition payment of funds from contractor to subcontractors); *Active Fire Sprinkler Corp. v. U.S. Postal Serv.*, 811 F.2d 747, 756 (2d Cir. 1987) (holding, in a non-bankruptcy case, that unpaid subcontractors can recover in lien action against unpaid contract funds held by United States Postal Service, which had waived sovereign immunity); *Western Cas. & Sur. Co. v. Brooks (In the Matter of Bruns Coal Co., Inc.)*, 362 F.2d 486, 491 (4th Cir. 1966) (holding that sureties that had paid materialmen of bankrupt contractor had no subrogation rights to any funds in excess of amounts paid to materialmen).

Some of these cases, however, do involve an issue not yet reached by the bankruptcy or district court in this case (and not fully briefed by the parties): the nature of OTS's interest in the funds once they are part of the bankruptcy estate. For example, the Third Circuit held that, *under the facts of the case before it*, the bankrupt debtor held the "retained" funds owed to it by federal agencies in "an equitable trust" for the unpaid subcontractors' benefit. *Universal Bonding*, 960 F.2d at 375-76; *see also Henningsen v. U.S. Fid. & Guar. Co.*, 208 U.S. 404, 410 (1908) (stating, prior to the enactment of the Bankruptcy Code, that the Government had an "equitable obligation[ ]" to ensure the

payment of laborers and suppliers on public construction projects); *Active Fire Sprinkler*, 811 F.2d at 755 (noting, in a non-bankruptcy case, that "[it] is not new law that unpaid subcontractors hold an equitable interest in a contract balance owed by a building owner to a general contractor" (*citing* Restatement of Security § 141 & cmt. e (1941))).

On remand, the bankruptcy court will have to examine the facts of the case at hand to determine if there is any basis for finding that OTS has a similar equitable interest.[4] The court will also have to determine how that interest is treated under the Bankruptcy Code. *See, e.g.*, 11 U.S.C.A. §§ 506, 507, 510 (West 2006) (governing secured interests, priorities, and subordination). These questions — involving rights and equities under the Bankruptcy Code — are best determined in the first instance by the bankruptcy court.

## III.

For the foregoing reasons the judgment of the district court is

*VACATED AND REMANDED.*

---

[4]For instance, some commentators place significance on whether the fund at issue was withheld to protect the subcontractor's interest. *See, e.g.*, Brown, *The Law of Debtors & Creditors* § 9:13 (West 2006). Although the bankruptcy court found that the "purpose of the fund in question is to protect the unpaid materialmen and subcontractors," it did not explain the basis for this finding. If this finding is necessary to the outcome on remand, the bankruptcy court must explain its rationale.