SAYRE, JUDGE:
RLI Insurance Company (“RLI”), the claimant in this action, brought this claim to recover monies that it asserts were wrongfully transmitted by the respondent, Division of Highways (“Highways”), to a construction company known as Roberts Construction Company (“Roberts”) as well as to a sister State agency, the West Virginia Bureau of Employment Programs (WVBEP)for the Workers’Compensation Fund. RLI had assumed responsibility for the completion of the Mullens Bridge construction project in Wyoming County as the bonding company acting as surety on Roberts’ behalf when the subject transfers of funds occurred. The Court is of the opinion to make an award in this claim for the reasons set out herein below.
The facts in this claim are not in dispute, the parties having filed a stipulation of facts in the claim. This stipulation is in pertinent part substantially as follows:
Roberts was awarded a contract with Highways dated March 22, 2002, in the original amount of $1,293,795.31 for the construction of Project U355-16-25.61; BR-0016(118)E, Mullens Bridge #4704, Wyoming County, Contract ID No. 9805003 (the “Bridge Project”).
Roberts provided Highways a surety performance and payment bond in the original amount of $1,319,671.22 for the Bridge Project. RLI acted as the surety for Roberts on the construction contract for the Bridge Project.
When in 2003 Roberts defaulted under the construction contract, Highways made a claim against RLI, as surety on the performance and payment bond, and RLI accepted the claim and funded the Bridge Project for completion.
Roberts and certain named Indemnitors entered into a Joint Control Trust Account Agreement with RLI dated December 5,2003, andRoberts entered into aTrust Account Agreement dated March 5,2004, directing Highways to deposit all subsequent Bridge Project contract payments into aTrust Account (the “Trust Account”) established at BB&T Bank by RLI for the Bridge Project. While the Payee name and address in the State of West Virginia’s Financial Information Management System (“FIMS”) remained that of Roberts, the bank routing information for the receiving bank was changed to direct electronic payments to the Trust Account established by RLI and Roberts.
Payments totaling $377,510.24 were deposited directly into the Trust Account by the State of West Virginia on behalf of Highways from April 2004 through September 2004. Those payments into the Trust Account were used by RLI to complete the Bridge Project.
In the spring of 2005, Roberts (which, following RLI’s assumption of responsibility as surety, had been employed by RLI to complete the Bridge Project) submitted a request for Change Orders 14 and 15, for a total value of $114,869.95 for extra work performed on the Bridge Project.
While Highways was in the process of evaluating the request for Change Orders, onmultiple occasions betweenMarch 22,2005, through July 2006, RLInotified Highways that in the event the extra work was approved for payment, any payment for the extra work was the property of RLI and should be deposited to the Trust Account. At no time during those communications was RLI notified that Highways was going to release payment directly to Roberts or on Roberts’ behalf to the WVBEP (Workers’ Compensation Fund). (In fact, the communications between respondent and RLI’s *12 entitlement to the funds document this assertion.)
On April 26, 2006, Phillip W. White, Construction Engineer for Highways, advised counsel for RLI that the amount of Estimate 34 was approved in the amount of $167,634.95 and Estimate 35 in the amount of $2,437.90 but Highways was waiting for agreement to those amounts by Tim Roberts of Roberts. Counsel for RLI was advised at that time that payment had not been released.
On May 12,2006, Highways advised counsel for RLI that Roberts had returned the final estimate. During that conversation, Highways was advised that the union was also making a claim for payment. Counsel for RLI advised Flighways to have the union representative contact counsel for RLI regarding payment. Counsel for RLI further advised Flighways that Flighways was not to release payment directly to Roberts and that if it did, Highways would be putting itself in a bad position. Counsel for RLI also advised Highways that he would discuss this issue with Jeff Miller, Flighways’ counsel, and call back. Later that day, White called RLI back and advised that Highways is going to work on this issue the following week. White confirmed receipt of the e-mail from counsel for RLI and that attorney Miller had instructed Michael H. Sidles, the Director of Contract Administration for Highways, to flag the payment (which RLI took to mean to hold the payments until the issue is resolved).
Notwithstanding the above communications, the account was not flagged within the FIMS system.
E-mails were made between counsel and telephone calls were made by counsel for RLI to various employees for Highways concerning the payments to be made to RLI by Highways. The Court notes certain of these telephone calls:
On June 28,2006, and on June 29,2006, RLI made calls to White, and having not received an answer, called an associate, Howard Levy, Construction Office Manager for Highways, who advised RLI that White had had to leave and was not in the office the day prior, either. That same day, counsel for RLI spoke with Ron Smith, the Regional Engineer for Flighways, in an attempt to determine when the funds would be released to the Trust Account.
On July 11,2006, RLI’s counsel spoke with White who advised that White did not know anything more than he knew the previous week and would have attorney Miller call counsel for RLI.
On July 11,2006, RLI’s counsel spoke with attorney Miller and Sidles and was advised, among other things, that payment had been approved for issuance to Roberts on April 26,2006, and, on July 18,2006, during a conference call with attorney Miller and Sidles, counsel for RLI was advised that respondent employees do not know why the check was issued to Roberts.
In April 2006, Highways submitted documents to the West Virginia State Auditor’s Office for payment of Progress Voucher No. 34 in the sum of $167,634.95 in the same manner as it had submitted past progress payments that were electronically deposited into the Trust Account. Because WV BEP had filed a lien with the West Virginia State Auditor’s Office in the amount of $72,072.33, the State Auditor did not make one electronic deposit to the Trust Account in the foil amount, but rather caused the State Treasurer to issue two paper drafts, one payable to WVBEP in the amount of the lien, and the other directly to “Roberts Construction Company”, at the Louisa, Kentucky, address for Roberts in the FIMS system, for $95,562.62, the balance of the *13 estimate[2].
The payment in the amount of $95,562.62 issued directly to Roberts rather than to the Trust Account on May 11, 2006, was promptly negotiated by Roberts.
On Wednesday, July 19, 2006, RLI received documentation from Highways confirming release of the payments directly to Roberts and on its behalf to WVBEP. By letter issued Tuesday, July 25,2006, RLI demanded tender of the payment improperly sent to or on behalf of Roberts. T o date, neither Roberts nor Highways has honored this demand.
At the time of Roberts’ default, RLI was surety for Roberts in several construction contracts with Highways, not just the Mullens Bridge Project. Through February 28,2009, RLI sustained losses in the total amount of $922,808.46 as a result of the Roberts’ default. These losses were not broken down as to RLI’s losses on the Bridge Project and its losses on the other contracts for which RLI stood as surety for Roberts. For the reasons set forth below, this Court is of the opinion, however, that the share of RLI’s $922,808.46 loss that can be assigned to the Bridge Project is immaterial to the Court’s decision in this claim.
RLI had a policy of re-insurance for sums paid for Roberts in excess of a deductible of $500,000.00 that were paid under the terms of the surety performance and payment bond with Roberts. RLI has claimed reimbursement from its re-insurer in the amount of $422,808.46 subject to the following credit: To date, RLI has recovered $115,070.00 due to sales of equipment, all of which has been refunded to its re-insurers. For the reasons set forth below, the Court is of the opinion that the amount RLI may recover from these sales or from future sales of equipment, if any, is immaterial to the Court’s decision in this claim.
Roberts is currently in bankruptcy. At present, there are assets in the Bankruptcy Estate with a value of $497,221.78. For the reasons set forth below, this Court is of the opinion that the amount RLI might possibly recover in the Roberts bankruptcy proceeding, if any, is immaterial to the Court’s decision in this claim.
RLI maintains that it is owed monies due for Estimate 34 in the total amount of$ 167,634.95. RLI also claims that it is also due the amount of $2,437.90 for Estimate 35 which is currently being held by the Tax Department. RLI asserts that the diversion of the monies by the Office of the State Auditor is the responsibility of the Highways and Highways’ failure to properly notify the State Auditor that any money due and owing on this particular contract for the Bridge Project was to be paid directly to RLI as the surety for its completion of the project.
Highways avers that it does not owe RLI any money for completion of the Bridge Project because it acted responsibly and with due diligence in performing all of its duties with respect to the payments to be made to RLI. In fact, payments were made in accordance with the Trust Account agreement through BB&T B ank to RLI during the *14 progress of the construction project.[3] The fact that Estimate 34 in the amount of $ 167,634.95 was paid to Roberts after certain deductions made for the amount owed the WV BEP was not at the direction of Highways or in consultation with Highways. This was an action taken by the State Auditor without the knowledge or consent of either Highways or RLI. Highways fully anticipated that the payment for Estimate 34 would be paid to RLI’s Trust Account just as the progress payments were made to RLI and Highways had no responsibility for the diversion of the funds directly to WVBEP or to Roberts. Therefore, the argument put forth by RLI that this claim should be paid in equity and good conscience as a moral obligation of the State fails since Highways acted in good faith and with due diligence in all actions regarding the payments due to RLI for the Bridge Project.
As to Estimate 35, the final payment due on the contract, Highways assert it is unable to make any payment to any entity because the State Tax Department has notified Plighways that it is to hold payment of the $2,437.90, and, in fact, Highways was still holding these funds at the time of the hearing of this claim. There has been no explanation given to Highways for this directive from the State Tax Department so this Court is unable to address the payment of Estimate 35 at this time although it appeared at the hearing that the parties agreed that the money is due and owing to RLI.
Highways also asserts that the issues in this claim should be determined in the Bankruptcy Court rather than in this Court since there are issues of priority and there may be funds available to RLI which are not known at this time to any of the parties. Since the primary obligation for paying the contract monies should be met by Roberts, Highways should not have any obligation for the payment of Estimate 34 to RLI. Highways takes the position that the Court herein should hold this claim until the Bankruptcy Court has resolved all of the issues pending before it at this time.
Further, Highways argues that, as the surety, RLI takes the risk when it enters into contracts with construction companies for performance and payment bonds that these companies do not owe taxes or other obligations that may affect the payments to be paid to it if there is a failure to perform by a particular construction company for which it is the surety.
When a final estimate is going to be paid by Highways on any construction project, it is at that time that Highways seeks releases from the State Tax Department and the Bureau of Employment Programs to determine if any monies are due those entities from the contractor on the project. Final payment is not made pending satisfaction of the monies due by the contractor. In this claim, the final amount to be paid to RLI was for Estimate 35 but it was Estimate 34 that was subject to the diversion of funds by the State Auditor. In this particular instance the expected procedure was not followed by the State Auditor so Highways maintains that it has no responsibility for the diversion of the funds to WVBEP and to Roberts.
While the facts in this claim are not in dispute as evidenced by the stipulation entered into by the parties and referred to herein above, the parties are in disagreement as to the law applicable in this claim.
This Court believes that the importance of its decision in this claim goes well *15 beyond the subject dispute between the parties in this particular claim. The State of West Virginia, in all of its component parts, depends upon private contractors to construct, maintain and repair all forms of public improvements; roads and bridges, airports, courthouses, college and university buildings, and sports arenas, to name a few. State law requires that these private contractors famish a bond to assure the proper completion of these projects and the payment of the contractor’s workers and for the materials incorporated into the public improvement.[4]
In many of these public improvement projects, federal funds are the source of most or all of the monies expended. The federal government likewise requires that, in all state construction projects in which federal funds are expended, the private contractors must furnish a performance and payment bond. Both West Virginia and federal law explicitly require the private contractor to provide an acceptable surety for these performance and payment bonds.
The pool of acceptable companies willing and able to provide and act as surety for private contractors is not large. Should this Court not follow the legal precedents of our sister states and the federal courts, it would only reduce the number of such companies willing to do business in West Virginia. As to those remaining, one must ask oneself whether or not these acceptable surety companies will do so only if the fees they charge amply reflect the added risk of loss. All this necessarily in turn reflects itself in the price the State and its subdivisions must pay for the public improvements we all hope to see and have come to expect.
What then are the legal precedents of our sister states and the federal courts?
To answer the legal questions in this claim the Court agrees with RLI that, as Roberts’ surety, RLI’s right to payment on all sums due on the Bridge Project subsequent to the surety’s assumption of the responsibility to complete the project and to pay in fall all the labor and material costs required to do so, is not only derived from the surety agreement folded into Roberts performance and payment bond and the Trust Agreement signed by Roberts, but also by the surety’s right of equitable subrogation. This subrogation right is superior to the interest of any other subsequent lienor or claim against the original contractor, Roberts.
Simply stated, when Highways found Roberts to be in default, it called on Roberts’ surety, RLI, to complete the project and pay the expenses of labor and materials. Estimates 34 and 35 are both reflective of payments due from Highways for work performed for RLI after it became responsible for the completion of the Bridge Project. At and after that point, in legal effect, the contractor was RLI. As such, the monies that are the subject of this claim became the sole property of RLI who directed that they be deposited in the Trust Account. Highways must assume the risk and the loss for failing to insure that RLI’s direction was understood and followed by the State Auditor.
The leading case on this doctrine is Pearlman v. Reliance Insurance Company, 371 U.S. 132, handed down on December 3, 1962.
The leading case in this State on the issue before this Court is Logan Planning Mill Company v. Fidelity Casualty Company of New York, 212 F. Supp. 906 (S.D. W.Va.) handed down by Judge Watkins on December 20, 1962.
Quoting Pearlman, Judge Watkins stated:
...the surety at the time of the adjudication (of bankruptcy) was, as it *16 claimed, either the outright legal or equitable owner of the fund, or had an equitable lien or prior rights it, this property never became a part of the bankruptcy estate to be administered, liquidated, and distributed to general creditors of the bankrupt... . Some of the relevant factors in determining the questions are beyond dispute. Traditionally, sureties compelled to pay debts as their principal have been deemed to be entitled to reimbursement even without a contractual promise such as the surety here had and probably there are few doctrines better established than that a surety who pays the debt of another is entitle to all of the rights of the person he paid to enforce his right to be reimbursed. This rule is widely applied in this country.
Judge Watkins then cited with approval two prior decisions of the Supreme Court. Prairie State Bank of Chicago v. United States, 164 U.S. 227 (1896) and Henningsen v. U.S. Fid. & Guar. Co. 208 U. S. 404 (1908).
See also State v. Coda, 103 W.Va.676, 138 S.E.324 (1927) which cites with approval both of the last two cited cases.
Thus, as the primary payor for funds due on the performance of the construction contract, RLI stands as the only entity that is entitled to payment on the contract.[5] Any money due for performance of the contract belongs to and should have been paid to RLI.[6]
The Court is of the opinion that the diversion of the monies owed for Estimates 34 and 35 was wrongM and constitutes a breach of contract on the part of the Highways. The monies should be paid to RLI by Highways because RLI is an innocent party as to the diversion of monies by the State Auditor. Only Highways had control of the monies and it had the duty to ascertain payment to the appropriate trust account at BB&T Bank.
Highways apparently is unable to resolve the issue of the release of funds for Estimate 35 in the amount of $2,437.90 with the appropriate personnel at the Tax Department. This Court is of the opinion that the amount is due and owing to RLI; therefore, the Court requests that Highways’s counsel provide a copy of this opinion to that agency in order that the payment may be made to RLI based upon the conclusions of law as determined by this Court. The money due on Estimate 35 should rightfully be paid to RLI and no other person or entity.
In accordance with the findings of fact and conclusions of law herein above, *17 the Court is of the opinion to and does make an award to RLI in the amount of $167,634.95.
Award of $167,634.95.
The Honorable George F. Fordham Jr., Presiding Judge, concurs in the decision in this claim and reserves the right to file a concurring opinion.

 The Court notes that as to this lien for Workers’ Compensation, the lien was actually filed against an entity known as “David P. Roberts Construction Company” rather than the contractor for the Mullens Bridge Project which was Roberts Construction Company. The FEIN number for both named entities was the same.
Also, the Workers’ Compensation lien was for projects which predated or postdated the contract for the Mullens Bridge Project.

 There were six progress payments made through electronic transfer to BB&T Bank prior to Estimate 34. The method of processing the documentation by respondent was done in the same manner for each of those six payments and the payment method for Estimate 34 was not anticipated to be any different from these other previously made payments by respondent.

 See W.Va. Code 38-2-39 (2008)

 The Court notes that there are a limited number of surety companies throughout the United States which are willing to provide this important contract service for construction contractors and owners of construction projects. To fail to uphold the law as it is applied by the courts throughout this country may very well jeopardize the ability of State agencies bidding construction projects to attract surety/performance bond companies and that would greatly affect construction projects by all State agencies, not just the respondent, Division of Flighways. It could also result in greater cost for these projects in increased premiums charged construction contractors for such coverage.

 As required under the Miller Act for contracts performed for the federal government, performance and payment bonds must be provided for all construction projects. The State of West Virginia likewise requires performance and payment bonds in all State construction projects.